1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JESSICA DEARAUJO, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>REGIS CORPORATION, a Minnesota corporation; SUPERCUTS CORPORATE SHOPS, INC., a Minnesota corporation; and DOES 1 through 99, inclusive,<br><br>        Defendants. | No.  2:14-cv-01408-KJM-AC<br><br><br>ORDER |
| AMYMARIE KAELAN, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>REGIS CORPORATION, a Minnesota corporation; SUPERCUTS CORPORATE SHOPS, INC., a Minnesota corporation; and DOES 1 through 99, inclusive,<br><br>        Defendants. | No. 2:14-cv-01411-KJM-AC |

1

1    This wage and hour class action is before the court on a motion for preliminary

2  approval of a class settlement and for conditional certification of the class filed by plaintiffs

3  Jessica Dearaujo and Amymarie Kaelan.  ECF No. 31.[1]  The motion is unopposed.  *See* ECF

4  No. 33.  The court held a hearing on the matter on June 17, 2016, at which James Hawkins and

5  Sean Vahdat appeared for plaintiffs and Catherine Dacre appeared for defendants.  As explained

6  below, the motion is GRANTED.

7  I.    BACKGROUND

8        A.    Factual and Procedural Background

9    Defendant Supercuts Corporate Shops, Inc. ("Supercuts") is a wholly owned

10  subsidiary of defendant Regis Corporation ("Regis") (collectively, "defendants"), which is

11  authorized to do business in California in cosmetology and hair care.  Vahdat Decl. ¶ 5.  Plaintiff

12  Kaelan worked for defendants as a stylist beginning in 2008, was promoted to District Leader

13  from on or about December 2010 through September 2012, and then served as the Regional

14  Human Resources Manager from September 2012 through on or about 2014.  Kaelan Decl. ¶ 3.

15  She asserts five claims: (1) failure to indemnify necessary expenditures; (2) failure to provide

16  accurate wage statements; (3) failure to timely pay wages, (4) violation of the California Unfair

17  Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (5) penalties under the

18  Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code §§ 2698 *et seq.*

19    Plaintiff Dearaujo worked for defendants as a stylist beginning on July 23, 2008,

20  and was promoted to Salon Manager on or about March 1, 2009.  Dearaujo Decl. ¶ 3; Mem. P &

21  A. at 4.  She is currently employed with defendants as a Salon Manager in Modesto, California.

22  Dearaujo Decl. ¶ 3.  She asserts six claims: (1) failure to provide meal periods; (2) failure to

23  authorize and permit rest periods; (3) failure to provide accurate wage statements; (4) failure to

24  reimburse necessary expenditures; (5) violation of the UCL; and (6) penalties under PAGA.

27        [1] Unless otherwise specified, the ECF numbers cited in this order refer to the docket in
28  *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. filed June 11, 2014).

2

1     Plaintiffs filed their original class action complaints in Stanislaus County Superior

2 Court against Regis on May 8, 2014, and Regis removed the actions to this court on June 11,

3 2014.  ECF No. 1.  On April 15, 2015, as provided by a joint stipulation, plaintiffs filed first

4 amended complaints, which added Supercuts as a defendant.  *See* ECF No. 22.  On May 11, 2015,

5 defendants filed answers to the first amended complaints.  *See* ECF No. 23.  On December 2,

6 2015, the court granted the parties' request to consolidate the two actions.  ECF No. 28.

7     The court set a schedule for a hearing on a motion for class certification, ECF

8 Nos. 11, 25, 28, but the parties first reached preliminary settlement after a full day of private

9 mediation on June 15, 2015, *see* Mem. P & A. at 4–5; Joint Stip. Class Action Settlement at 4,

10 Vahdat Decl. Ex. A ("Joint Stip."); ECF No. 29.  Prior to the mediation, the parties engaged in

11 formal discovery, which included the production of documents and responses to interrogatories

12 and document requests, as well as the taking of depositions of plaintiffs Kaelan and Dearaujo.

13 *See* Vahdat Decl. ¶¶ 6, 8–9; Mem. P. & A. at 4, 14; Joint Stip. at 4.  The parties also engaged in

14 informal discovery, which included an exchange of documents, such as a sample of defendants'

15 time records and pay records.  *See* Vahdat Decl. ¶¶ 6, 8–9; Mem. P. & A. at 4, 14; Joint Stip. at 4.

16 No other pretrial litigation has occurred.

17     Plaintiffs filed the present motion for preliminary approval on May 5, 2016.  ECF

18 No. 31.  Defendants filed a statement of non-opposition to the motion on June 3, 2016.  ECF

19 No. 33.

20     B.     Proposed Terms of Class Action Settlement

21          1.     Settlement Classes

22     Kaelan proposes a settlement class ("Kaelan Settlement Class") of all persons

23 employed by defendants as an Area Supervisor, District Leader, or Senior District Leader in

24 California at any time from May 8, 2010 through the date of preliminary approval of the

25 settlement ("Settlement Class Period"), and who do not opt out of the Class Action Settlement

26 Agreement ("Settlement" or "Settlement Agreement").  Joint Stip. at 2.  Dearaujo proposes a

27 settlement class ("Dearaujo Settlement Class") of all hourly non-exempt persons employed by

28 defendants as a Shift Manager or Salon Manager in California at any time during the same

1  Settlement Class Period, and who do not opt out of the Settlement.  *Id.*  The combined Settlement

2  Classes would comprise approximately 1,752 present and former employees (747 District Leaders

3  and 1,005 Managers).  Vahdat Decl. ¶ 19; Mem. P. & A. at 3.  The parties have stipulated to the

4  existence of a class for purposes of settlement.  Mem. P. & A. at 19; Joint Stip. at 5–6.

5          2.      Notice to Class Members, Objections, and Opt Out Requests

6        Simpluris, Inc. will serve as claims administrator.  Mem. P. & A. at 20–22.

7  Simpluris, Inc. will send Class Notice of Settlement to the individual members of the Settlement

8  Classes by postmarked First Class U.S. Mail within fifteen calendar days of receipt of the contact

9  information for the Settlement Classes from defendants.  Joint Stip. at 8–9.  If no forwarding

10  address is provided for a Class Notice of Settlement that is returned as non-deliverable, the

11  settlement administrator will use the best available technology accessible to the settlement

12  administrator (e.g., skip tracing, address verification, etc.) or a mutually agreeable method to

13  locate members of the Settlement Classes and mail them Class Notice of Settlement.  *Id.*

14        Settlement Class Members who wish to exclude themselves from the Settlement

15  ("opt out") may use the procedure set forth in the Class Notice of Settlement no later than forty-

16  five days after the Class Notice of Settlement is mailed, based on the post-marked date of the

17  mailing.  *Id.* at 13.  Putative class members could also object to the Settlement Agreement within

18  the same forty-five-day period.  *Id.*  Requests to opt out or objections will be deemed to be

19  submitted as of the postmarked date.  *Id.*

20        If more than ten percent (10%) of the Settlement Classes objects or opts out,

21  defendants have the right to revoke the entire Settlement Agreement.  *Id.*

22          3.      Total Settlement Payment and Individual Settlement Payments

23        Defendants agree to pay a gross settlement amount of $1,950,000 ("Total

24  Settlement Payment").  Joint Stip. at 6.  Attorneys' fees and costs, enhancement payments,

25  payments to the California Labor and Workforce Development Agency (LWDA), and payments

26  to the settlement administrator would first be deducted from the Total Settlement Payment, and

27  then the remainder would be allocated toward payment to the Settlement Classes ("Net Settlement

28  Amount").  *Id.* at 6, 8.

1    The Law Offices of Sean S. Vahdat & Associates, APLC, and the Law Offices of

2  James Hawkins APLC will serve as class counsel.  Mem. P. & A. at 6.  Class counsel will apply

3  to the court for, and defendants will not oppose, attorneys' fees of up to $650,000, or thirty-three

4  and one-third percent (33 1/3%) of the Total Settlement Payment, plus all documented and

5  reasonable litigation costs not to exceed $25,000.  Joint Stip. at 6.  Current costs to date total

6  approximately $8,807.17, and counsel anticipate no more than $2,000 to $4,000 in additional

7  costs.  Vahdat Decl. ¶ 10.  The award of attorneys' fees or an enhancement award less than the

8  requested amount is not a material condition to the Settlement Agreement.  Joint Stip. at 7.

9  Defendants agree to pay class representatives Kaelan and Dearaujo an enhancement award not to

10  exceed $15,000 each in addition to any payment they may otherwise receive as settlement class

11  members.  *Id.* at 7.  The parties agree the fees and costs associated with administering the

12  settlement of this action not to exceed $25,000 will be paid from the Total Settlement Payment.

13  *Id.* at 7–8.  The parties further agree to allocate $10,000 from the Total Settlement Payment to

14  penalties under PAGA, with seventy-five percent (75%) paid to the LWDA.  *Id.* at 8.  The

15  remaining Net Settlement Amount to be allocated for individual settlement payments to the

16  settlement class members is estimated to be $1,212,500.00:

17
| $1,950,000 | Gross Settlement Amount |
|---|---|
| (650,000) | Plaintiffs' Attorneys' Fees |
| (25,000) | Estimated Litigation Costs |
| (30,000) | Class Representatives' Enhancement Payments |
| (25,000) | Estimated Class Administration Fees and Costs |
| (7,500) | Payment to the LWDA under PAGA |
| $1,212,500 | Estimated Net Settlement Amount |

21  *See* Mem. P. & A. at 6, 12.

22    The portion of the Net Settlement Amount that is paid to each Settlement Class

23  Member would be determined based on the following formula:

24    (a) The payment to the Settlement Classes will be based on the
      number of weeks worked by the Settlement Classes . . . .

26    (b) The amount to be paid per week worked by a Settlement Class
      Member will be calculated by dividing the value of the Net
      Settlement Amount by the total number of weeks worked by all
      Settlement Class Members during the Settlement Class Period.

(c) In consideration for their release of claims arising under California Labor Code sections 201 to 203, members of the Kaelan Settlement Class who were separated from employment with Defendants between May 8, 2011 until the Effective Date will have the amount that they would otherwise receive under [paragraph (b)] multiplied by 1.2.

Joint Stip. at 10–11.  The total aggregate number of workweeks referenced in paragraph (b) is all weeks by all Settlement Class Members who do not opt out plus any workweek enhancements to the Kaelan Settlement Class under paragraph (c).  Mem. P. & A. at 7.

This formula was negotiated based on a total of 249,691 employment weeks that the Settlement Classes worked between May 8, 2010 and June 15, 2015 (the date of the mediation).  Joint Stip. at 11.  If the total number of workweeks exceeds 249,691 by more than five percent (5%), the parties agree to discuss, prior to the Final Approval hearing, whether the Total Settlement Payment should be increased.  *Id.*  An example of the formula is as follows: Assuming the Net Settlement Amount is $1,212,500, the total aggregate workweeks is 249,691, and Jane Doe worked 156 weeks, Jane Doe would receive an individual settlement payment of $756.60 ($1,212,500 / 249,691 = $4.85 [Weekly Rate] x 156  = $756.60).  *See* Mem. P. & A. at 8.

Any unclaimed funds would be sent to the Department of Industrial Relations of State of California Unclaimed Wage Fund.  Joint Stip. at 11.

4.    Claims Released

All Settlement Class Members who do not opt out of the Settlement will be bound by the terms of the Settlement Agreement and subject to its release provisions.  *Id.* at 13–14.  In exchange for the benefits provided in the Settlement Agreement, the Settlement Class Members would release the specified "Released Parties" from all causes of action that relate to any wage or hour claims that were pled or could have been pled against defendants based on the facts alleged in the original complaints and first amended complaints in the Dearaujo and Kaelan Class Actions.  *Id.*  In addition, the Class Representatives agree to provide a general release from all claims arising out of their employment with defendants, and defendants agree to release the Class Representatives from all claims known or discovered through the date of execution of the

6

1  stipulation.  *Id.* at 14–16.  Defendants deny they violated the law in any manner alleged in the

2  Class Actions.  *Id.* at 4.

3              5.      Voiding the Settlement Agreement

4              If the court does not approve the proposed agreement or materially modifies the

5  proposed agreement, other than as to the amount of attorneys' fees and enhancement award, the

6  adversely affected party has the right to void the entire Settlement Agreement by giving notice, in

7  writing, to the other party and to the court at any time prior to final approval of the agreement by

8  the court.  *Id.* at 18.

9  II.      LEGAL STANDARD

10             "Courts have long recognized that 'settlement class actions present unique due

11  process concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig.*

12  *(Bluetooth)*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

13  1026 (9th Cir. 1998)).  In settlement classes, the class's motivations may not perfectly square

14  with those of its attorneys.  *See id.*  An attorney representing a settlement class may be tempted to

15  accept an inferior settlement in return for a higher fee.  *Knisley v. Network Assocs., Inc.*, 312 F.3d

16  1123, 1125 (9th Cir. 2002).  Likewise, defense counsel may be happy to pay his counterpart a bit

17  more if the overall deal is better for his client.  *See id.*; *see also In re Gen. Motors Corp. Pick-Up*

18  *Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that the

19  settlement class "is a vehicle for collusive settlements that primarily serve the interests of

20  defendants—by granting expansive protection from law suits—and of plaintiffs' counsel—by

21  generating large fees gladly paid by defendants as a quid pro quo for finally disposing of many

22  troublesome claims").  In addition, if the settlement agreement is negotiated before the class is

23  certified, as it was in this case, the potential for an attorney's breach of fiduciary duty looms

24  larger still.  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

25             To protect absent class members' due process rights, Rule 23(e) of the Federal

26  Rules of Civil Procedure permits a class action to be settled "only with the court's approval"

27  "after a hearing and on a finding" that the agreement is "fair, reasonable, and adequate."  Each of

28  these words must have meaning: a fair settlement treats all class members equitably; a reasonable

7

1    settlement has its basis in analysis; and an adequate settlement compensates class members for

2    the wrongs they suffered.  *See Bluetooth*, 654 F.3d at 946 (listing facets of the court's fairness

3    assessment and describing motivations for the court's inquiry).  When settlement is hashed out

4    before class certification, a motion for class certification "must withstand an even higher level of

5    scrutiny for evidence of collusion or other conflicts."  *Id.* (citations omitted).  "Judicial review

6    must be exacting and thorough."  Manual for Complex Litigation, Fourth (MCL) § 21.61 (2004).

7           As the Ninth Circuit has recognized, however, the "governing principles may be

8    clear, but their application is painstakingly fact-specific," and the court normally stands as only a

9    spectator to the parties' bargaining.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

10   "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates

11   not only delay but also a state of uncertainty on all sides, with whatever gains were potentially

12   achieved for the putative class put at risk."  *Id.*  And federal courts have long recognized "[a]

13   strong judicial policy favors settlement of class actions."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F.

14   Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th

15   Cir. 1992)).

16          As a functional matter, a "[r]eview of a proposed class action settlement generally

17   involves two hearings."  MCL § 21.632.  First, the parties submit the proposed terms of the

18   settlement so the court can make "a preliminary fairness evaluation," and if the parties move "for

19   both class certification and settlement approval, the certification hearing and preliminary fairness

20   evaluation can usually be combined."  *Id.*  Then, "[t]he judge must make a preliminary

21   determination on the fairness, reasonableness, and adequacy of the settlement terms and must

22   direct the preparation of notice of the certification, proposed settlement, and the date of the final

23   fairness hearing."  *Id.*  Notification is the most important consequence of preliminary approval.

24   *See* Newberg on Class Actions (Newberg) § 13:13 (5th ed. 2011).  After the initial certification

25   and notice to the class, the court conducts a second fairness hearing before finally approving any

26   proposed settlement.  *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267 (9th Cir. 2010).

27

28

1    Here, the court undertakes the first, preliminary step only.  Rule 23 provides no

2 guidance, and actually foresees no such procedure, but federal courts have generally adopted

3 some version of the following test:

4         Preliminary approval of a settlement and notice to the proposed
          class is appropriate if "the proposed settlement appears to be the
5         product of serious, informed, non-collusive negotiations, has no
          obvious deficiencies, does not improperly grant preferential
6         treatment to class representatives or segments of the class, and falls
          with the range of possible approval."
7

8 *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10,

9 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007));

10 *accord* Newberg § 13:13; MCL § 21.632 & n.976.

11 III.    DISCUSSION

12    The court first considers the propriety of a class action, and then reviews the terms

13 of the parties' Settlement Agreement.

14    A.    Class Certification

15    Although the parties in this case have stipulated a settlement class exists, the court

16 must nevertheless undertake the Rule 23 inquiry independently, both at this stage and at the later

17 fairness hearing.  *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *1–2 (E.D.

18 Cal. June 13, 2006) (citing, *inter alia*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622

19 (1997)).

20    Litigation by a class is "an exception to the usual rule" that only the individual

21 named parties bring and conduct lawsuits.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

22 (2011) (citation and internal quotation marks omitted).  To be eligible for certification, the

23 proposed class must be "precise, objective, and presently ascertainable."  *Williams v. Oberon*

24 *Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19, 2010), *aff'd*, 468 F.

25 App'x 768 (9th Cir. 2012).  The requirement is a practical one.  It is meant to ensure the proposed

26 class definition will allow the court to efficiently and objectively ascertain whether a particular

27 person is a class member, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D.

28

1    Cal. 2010), for example, so each putative class member can receive notice, *O'Connor v. Boeing*

2    *N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

3              If a putative class may be ascertained, it must then meet both the threshold

4    requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b).  *Leyva*

5    *v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  Rule 23(a) imposes four requirements

6    on every class.  First, the class must be "so numerous that joinder of all members is

7    impracticable."  Fed. R. Civ. P. 23(a)(1).  Second, questions of law or fact must be common to the

8    class.  *Id.* R. 23(a)(2).  Third, the named representatives' claims or defenses must be typical of

9    those of the class.  *Id.* R. 23(a)(3).  And fourth, the representatives must "fairly and adequately

10   protect the interests of the class."  *Id.* R. 23(a)(4).

11             Here, plaintiffs will seek certification under Rule 23(b)(3).  *See* Mem. P. & A. at

12   18–19.  Rule 23(b)(3) imposes two requirements in addition to those of Rule 23(a): first, "that the

13   questions of law or fact common to class members predominate over any questions affecting only

14   individual members," and second, "that a class action is superior to other available methods for

15   fairly and efficiently adjudicating the controversy."  The test of Rule 23(b)(3) is "far more

16   demanding" than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

17   1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

18             Rule 23 applies just as well to an uncontested settlement class as to a contested

19   class that goes to trial: "Settlement, though a relevant factor, does not inevitably signal that class-

20   action certification should be granted more readily than it would be were the case to be

21   litigated . . . . [P]roposed settlement classes sometimes warrant more, not less, caution on the

22   question of certification."  *Amchem*, 521 U.S. at 620 n.16 (citation omitted).  When faced with a

23   motion to certify a settlement class, the court must pay "undiluted, even heightened, attention" to

24   Rule 23's provisions.  *Id.* at 620; *see, e.g.*, Randy J. Kozel & David Rosenberg, *Solving the*

25   *Nuisance-Value Settlement Problem: Mandatory Summary Judgment*, 90 Va. L. Rev. 1849, 1853

26   (2004) (pre-CAFA article opining that "[c]lass action has come under increasing criticism by

27   courts and commentators for exacerbating the nuisance-value settlement problem—and for doing

28   so to the systematic disadvantage of defendants").  *But see* Lance P. McMillian, *The Nuisance*

                                                    10

1   *Settlement "Problem": The Elusive Truth and A Clarifying Proposal*, 31 Am. J. Trial Advoc.

2   221, 221 (2007) ("[A]ctual proof of this type of legal extortion on a large-scale basis is almost

3   completely lacking.").

4          Moreover, the approval process runs the risk of becoming a rubberstamp.  Motions

5   to certify a settlement class are generally unopposed, as is this one.  The court hears argument

6   only in favor of certification.  *See Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at

7   *1 (N.D. Cal. June 19, 2007) ("Once the named parties reach a settlement in a purported class

8   action, they are always solidly in favor of their own proposal.  There is no advocate to critique the

9   proposal on behalf of absent class members.").  The court is often left to the plaintiff's argument

10  and its own devices.  The problem is greater at the preliminary approval stage, where objectors

11  are unlikely to have already appeared.

12         Federal courts have not provided consistent guidance on the specific Rule 23

13  standard a plaintiff must satisfy on a motion for preliminary approval; despite the Supreme

14  Court's cautions in *Amchem*, *see* 521 U.S. at 620 n.16, a cursory approach appears the norm.  *See*

15  Newberg § 13:18 & n.10.  To look at the question of an appropriate standard from a practical

16  point of view, if a district court concludes a class may be certified, even conditionally or

17  preliminarily, and if the parties' proposed agreement is fair upon preliminary review, notice will

18  be sent to potential class members.  *See* Fed. R. Civ. P. 23(e) ("The court must direct notice in a

19  reasonable manner to all class members who would be bound by the proposal [of settlement].").

20  The danger of an incorrect decision on a motion for preliminary approval and certification is

21  therefore the risk of unnecessary or erroneous class notice: confusion and waste.  If the class is

22  eventually not certified, the previously sent notice will have been a waste, or if the class is later

23  redefined, a revised notice must be sent, which may confuse potential class members.  *Cf., e.g.*, *In*

24  *re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 90 (D.D.C. 2012) (the risk of

25  unnecessary notice may call for a stay pending review under Rule 23(f)); *accord* Newberg 13:10

26  ("[S]ending notice to the class costs money and triggers the need for class members to consider

27  the settlement, actions which are wasteful if the proposed settlement is obviously deficient from

28

1   the outset.").  For these reasons, Dearaujo and Kaelan bear the burden of persuasion that class

2   notice will not lead to confusion or waste.

3           With these observations in mind, the court reviews each of Rule 23's

4   requirements.

5           1.     Existence of a Class

6           The proposed Settlement Classes consist of current and former Area Supervisors,

7   District Leaders, Senior District Leaders, Shift Managers, and Salon Managers at any of

8   defendants' California locations during the Class Period who do not opt out of the Settlement.

9   Joint Stip. at 2.  The parties anticipate defendants will send the claims administrator a list of the

10   names and addresses of the putative class members.  *See id.* at 9.  There appears no serious

11   question that the class is precise, objective, and presently ascertainable.

12           2.     Numerosity

13           To be certified, a class must be "so numerous that joinder of all members is

14   impracticable."  Fed. R. Civ. P. 23(a)(1).  "'[I]mpracticability' does not mean 'impossibility,' but

15   only the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs*

16   *Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964) (quoting *Advers. Specialty Nat. Ass'n v.*

17   *FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).  Although the Supreme Court has held that "[t]he

18   numerosity requirement . . . imposes no absolute limitations," *Gen. Tel. Co. of the Nw., Inc. v.*

19   *EEOC*, 446 U.S. 318, 330 (1980), courts generally find this requirement satisfied when a class

20   includes at least forty members, *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)

21   (unpublished) (citing *EEOC v. Kovacevich "5" Farms*, No. 06–165, 2007 WL 1174444, at *21

22   (E.D. Cal. Apr. 19, 2007)).  Here, both proposed settlement classes are sufficiently numerous.

23   Joinder of the 1,752 potential plaintiffs (747 District Leaders and 1,005 Managers) here would

24   prove impracticable.  *See* Vahdat Decl. ¶ 19; Mem. P. & A. at 3.  Much smaller classes have been

25   certified.  *See, e.g.*, *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010)

26   (collecting authority to show that classes of fewer than one hundred members may be certified);

27   *cf. Gen Tel. Co. Nw.*, 446 U.S. at 330 (a class of fifteen would be too small).

28

1          3.       Adequacy

2                To determine whether the named plaintiffs will protect the interests of the class,

3   the court must explore two factors: (1) whether the named plaintiffs and their counsel have any

4   conflicts of interest with the class as a whole, and (2) whether the named plaintiffs and counsel

5   vigorously pursued the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  Nothing in the

6   record here suggests Dearaujo or Kaelan face any conflict of interest with any other class

7   members.  *See* Dearaujo Decl. ¶¶ 5–17; Kaelan Decl. ¶¶ 5–18.  Likewise their counsel are

8   experienced class litigators, *see* Hawkins Decl. ¶ 5; Vahdat Decl. ¶ 22, and the record reveals no

9   conflicts of interest between class counsel and the putative classes.

10          4.       Typicality, Commonality, and Predominance

11                Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ.

12   P. 23(a)(2).  Common questions exist where putative class members suffer the same injury, *Gen.*

13   *Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982), such that simultaneous litigation is

14   productive, *Wal-Mart*, 564 U.S. at 350.  "This does not mean merely that [putative class

15   members] have all suffered a violation of the same provision of law."  *Id.*  Rather, the claims

16   "must depend upon a common contention" the nature of which "is capable of classwide

17   resolution."  *Id.*  Common litigation must "resolve an issue that is central to the validity of each

18   one of the claims in one stroke."  *Id.*  Although just one common question could suffice to

19   establish commonality, *id.* at 359, the true inquiry is into "the capacity of a classwide proceeding

20   to generate common *answers* apt to drive the resolution of the litigation," *id.* at 350 (emphasis in

21   original) (citation and internal quotation marks omitted).  "Dissimilarities within the proposed

22   class[, however,] . . . have the potential to impede the generation of common answers."  *Id.*

23   (citation and internal quotation marks omitted).

24                Here, the seven combined claims in the operative complaints present several

25   common questions, such as whether defendants' uniformly-applied policies and practices violated

26   the California Labor Code's requirements for indemnifying necessary expenditures, providing

27   meal and rest breaks, providing accurate wage statements, and timely paying wages upon

28   separation.  *See* Vahdat Decl. ¶¶ 23–24.  For example, if plaintiffs were to show (1) defendants

1   had a policy to indemnify certain business expenditures incurred by their employees; (2) the

2   policy applied equally to every putative class member; (3) the policy excluded certain business

3   expenditures from indemnification; and (4) such an exclusion was contrary to a specific provision

4   of the California Labor Code or other regulation, then the class as a whole could be shown to

5   have suffered the same injury, and in one stroke, defendants could face liability to each class

6   member.

7          Answering these common questions in plaintiffs' favor would not establish the

8   amount of a potential damages award.  The amount of reimbursement improperly withheld would

9   vary among the class members.  *See* Cal. Labor Code § 2802(b).  Nevertheless, a policy of

10  excluding necessary expenditures, if proven to exist, may "drive the resolution of the litigation,"

11  *Wal-Mart*, 564 U.S. at 350, despite other individualized questions, *see Leyva*, 716 F.3d at 514

12  ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule

13  23(b)(3)."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (a

14  class may be certified even though some questions of law or fact are not common to the class).

15         Typicality, like commonality, acts as a guidepost "for determining whether . . . a

16  class action is economical and whether the named plaintiff's claim and the class claims are so

17  interrelated that the interests of the class members will be fairly and adequately protected in their

18  absence."  *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157–58 n.13).  A court

19  resolves the typicality inquiry by considering "whether other members have the same or similar

20  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

21  whether other class members have been injured by the same course of conduct."  *Ellis v. Costco*

22  *Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations and citation omitted).

23  Here, the court is satisfied that, should common questions exist, Dearaujo's and Kaelan's claims

24  are typical of each Settlement Class.  Each plaintiff and her respective class members were

25  allegedly employed in similar or related positions during the same time period.  Plaintiffs and

26  each class member were allegedly subjected to the same unlawful, uniformly-applied policies.

27         After establishing typicality and the existence of common questions of law or fact,

28  plaintiffs must also establish that common questions "predominate over any questions affecting

14

only individual members," Fed. R. Civ. P. 23(b)(3).  "The predominance analysis under Rule
23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and
'tests whether proposed classes are sufficiently cohesive to warrant adjudication by
representation.'"  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting
*Hanlon*, 150 F.3d at 1022).  Courts are required "to take a 'close look' at whether common
questions predominate over individual ones."  *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S.
Ct. 1426, 1432 (2013) (citations and quotation marks omitted).

As discussed above, common questions relating to the lawfulness of defendants'
policies make up a significant aspect of the case and would likely permit determination of liability
on a class-wide basis.  The court is satisfied, for purposes of this motion, defendants' policies
applied equally to all putative class members.  These claims must, of course, be substantiated by
evidence before the class is certified.

### 5.   Superiority

Rule 23(b)(3) has long required a court to find a class action is the "superior"
method of resolution.  Fed. R. Civ. P. 23(b)(3) advisory comm. notes to 1966 amendment.  This
constraint should lead the court "to assess the relative advantages of alternative procedures for
handling the total controversy."  *Id.*  Rule 23(b)(3) provides that superiority is determined by
considering, for example,

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum; and
>
> (D) the likely difficulties in managing the class action.

*Id.*; *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).  A
settlement class will not reach trial, however, so the inquiry is somewhat tempered:

> Confronted with a request for settlement-only class certification, a
> district court need not inquire whether the case, if tried, would
> present intractable management problems, for the proposal is that

15

there be no trial.  But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context.

*Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

The question of superiority encompasses several concerns distinct from the other requirements of Rule 23(a) and (b)(3).  It contemplates the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at 617 (citation and internal quotation marks omitted).  It considers the existence and effect of other related lawsuits, *Zinser*, 253 F.3d at 1191, and whether this court is the right forum, Fed. R. Civ. P. 23(b)(3)(C).  And most basically, the court must assure itself that no alternative process would better serve the class members' interests.  *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996); 7A Charles A. Wright, et al., Federal Practice & Procedure § 1779 (3d ed. 2005) (individual litigation, joinder, multidistrict litigation, or an administrative or other non-judicial solution may be superior).

Here, plaintiffs argue a class action is the superior method of adjudicating the claims, because 1,752 individual cases for relatively small amounts of damages would be uneconomical; the cost of litigation would dwarf the potential recovery in each case.  Mem. P. & A. at 19.  In addition, these individual cases would cause an extensive duplication of effort and resources by defendants and the court.  *Id.*  The court is satisfied, for purposes of this motion, a class settlement is the superior form of litigation.

6.    Conclusion

The court concludes publication of class notice is unlikely to lead to confusion or waste.

B.    Preliminary Fairness Determination

As noted above, at this preliminary approval stage, the court considers whether the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re*

16

*Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citation omitted).  Several factors bear on the inquiry:

> i. the strength of the plaintiffs' case;
>
> ii. the risk, expense, complexity, and likely duration of further litigation;
>
> iii. the risk of maintaining class action status throughout the trial;
>
> iv. the amount offered in settlement;
>
> v. the extent of discovery completed, and the stage of the proceedings;
>
> iv. the experience and views of counsel; . . . and
>
> vii. the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citation omitted).

At the preliminary approval stage, the "initial evaluation can be made on the basis of information [contained in] briefs, motions, or informal presentations by parties," MCL § 21.632, and "the [c]ourt need not review the settlement in detail . . . ." *Durham v. Cont'l Cent. Credit, Inc.*, No. 07-1763, 2011 WL 90253, at *2 (S.D. Cal. Jan. 10, 2011) (citing Newberg § 11.25).  The court may not "delete, modify or substitute certain provisions." *Hanlon*, 150 F.3d at 1026 (citations and quotation marks omitted).  "The settlement must stand or fall in its entirety." *Id.* (citation omitted).

Here, the court finds the terms of the proposed settlement agreement to be within the range of possible approval.  Several points are worth noting.

First, participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citation omitted).  The court is reassured by the fact the parties reached settlement only after participating in a full-day mediation with an experienced third-party neutral. *See* Vahdat Decl. ¶ 9; Mem. P & A. at 4–5; Joint Stip. at 4.  The court also takes judicial notice the mediator, Michael Dickstein, has mediated other class action settlements, including one approved finally by the undersigned. *See Vanwagoner v. Siemens Indus., Inc.*, No. 13-01303, 2014 WL 7273642, at *1 (E.D. Cal. Dec. 17, 2014).  However, at this

1   point the court grants only preliminary approval; before final approval may be granted, the parties

2   must submit information exchanged during their mediation for the court's *in camera* review.  *See*

3   *Bowling v. Pfizer, Inc.*, 143 F.R.D. 138, 140 (S.D. Ohio 1992) (ordering "an *in camera*

4   disclosure" of confidential information concerning "all past settlements made by the Defendants

5   involving the [device in question]"); MCL § 21.631 ("A common practice is to receive

6   information . . . *in camera*.").

7            Second, the court notes it has relatively little to evaluate "the strength of plaintiffs'

8   case"; "the risk, expense, complexity, and likely duration" of this litigation as compared to any

9   class action; "the risk of maintaining class action status throughout the trial"; and "the amount

10   offered in settlement," *Hanlon*, 150 F.3d at 1026.  However, based on the information provided

11   by the parties, the proposed settlement appears to be within the range of possible approval.

12   Defendants have presented multiple factual and legal defenses regarding class certification and

13   liability, and further litigation would as noted likely require significant time and resources.  *See*

14   Mem. P. & A. at 11–12; Vahdat Decl. ¶¶ 7, 14, 17–18.  The claims asserted depend on a number

15   of individualized inquiries, especially given the facial compliance of defendants' meal and rest

16   periods and the lack of records as to whether individual class members in fact took rest periods.

17   Mem. P. & A. at 12.  Although the amount offered in settlement, a total award of $1,950,000,

18   represents only thirty-seven percent (37%) of the estimated potential recovery available, it

19   appears to be reasonable in light of plaintiffs' risk of losing at certification and trial and the

20   anticipated costs of further litigation.  *Id.* at 12–13; Vahdat Decl. ¶¶ 19, 21.  The court cautions

21   counsel, however, final approval can be granted only if the court receives much more detailed

22   information.  Again, before final approval may be granted, the parties must submit information

23   exchanged during their mediation for the court's *in camera* review so that the court may assess

24   the reasonableness of the settlement amount offered in light of the strength of plaintiffs' case and

25   the risk, expense, complexity, and likely duration of further litigation.  *See Bowling*, 143 F.R.D. at

26   140; MCL § 21.631.  "It has been remarked that the district court takes on the role of fiduciary for

27   absent class members, or that of a skeptical client, who critically examines the settlement's terms

28

18

1    and implementation." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 842–43 (E.D. La.

2    2007); *accord* Newberg 13:40; MCL § 21.61.  The court takes the role of fiduciary seriously.

3              Third, the parties reached settlement only after participating in significant formal

4    and informal discovery.  *See* Vahdat Decl. ¶¶ 6, 8–9.  They exchanged documents and other

5    information, and plaintiffs Dearaujo and Kaelan were deposed.  *Id.*; Mem. P. & A. at 4, 14; Joint

6    Stip. at 4.  These circumstances suggest the settlement was not engineered to enrich class counsel

7    at the expense of absent class members.  The court cautions counsel, however, final approval will

8    be granted only after the court receives a more detailed description of the parties' discovery

9    efforts in this case and why those efforts contributed to a fair, reasonable, and adequate

10   settlement.

11             Fourth, counsel for both parties are experienced in this type of litigation, and

12   plaintiffs' counsel believes the settlement to be fair.  *See* Vahdat Decl. ¶¶ 21–22; Hawkins Decl.

13   ¶¶ 4–5.[2]  The named class representatives likewise believe the settlement to be fair.  Kaelan Decl.

14   ¶ 8; Dearaujo Decl. ¶ 7.

15             Fifth, although the proposed fee award of thirty-three and one-third percent

16   (33 1/3%) is above the percentage-of-recovery "benchmark" rate of twenty-five percent (25%),

17   *see Morales v. Stevco, Inc.*, No. 09:00704, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011)

18   (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)), the record at this stage does not

19   lead the court to believe anything foul is afoot.  At the final approval stage, the court will

20   determine the exact amount of the fee award by considering the circumstances of the case, for

21   example, "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality

22   of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the

23   awards made in similar cases."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 456 (E.D.

24   Cal. 2013) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

25   _____

26              [2] The Ninth Circuit suggests "the experience and views of counsel" may inform the
     court's decision whether to approve a class settlement.  *Hanlon*, 150 F.3d at 1026.  This is
27   undoubtedly true: an attorney known widely to achieve fair results for her clients may assuage
     fears of collusion by vouching for a proposed settlement.  But on the other hand, past success
     settling class actions is also consistent with an aptitude for stealthy collusion.

28

                                                    19

1    Calculation of the lodestar may also serve as a cross-check of the reasonableness of the requested

2    percentage award. *Vizcaino*, 290 F.3d at 1050. "[C]ourts have stressed that when awarding

3    attorneys' fees from a common fund, the district court must assume the role of fiduciary for the

4    class plaintiffs" and closely scrutinize fee applications. *Id.* at 1052 (citation omitted). Where, as

5    here, the court is confronted with a clear sailing provision, "the district court has a heightened

6    duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and

7    benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they

8    are uncontested." *Bluetooth*, 654 F.3d at 948 (citation omitted).

9              Sixth, similarly, "[e]nhancements for class representatives are not to be given

10   routinely," *Morales*, 2011 WL 5511767, at *12, and the $15,000 enhancement award requested

11   for each named plaintiff here appears to be high, even if not astronomical. *See Palacios v.*

12   *Newman Grain, Inc.*, No. 14-civ-1804 (E.D. Cal. filed May 27, 2016) (finding requested

13   enhancement award of $10,000 for each of five named plaintiffs to be excessive in light of case

14   law, which typically approves an award of no more than $5,000 for each plaintiff; higher amount

15   approved for only one plaintiff in light of facts of his case); *see also, e.g.*, *Monterrubio*, 291

16   F.R.D. at 462 (collecting cases); *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. 07-

17   00362, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (collecting cases). At the final

18   approval stage, the court will assess whether the requested incentive payment is excessive by

19   balancing, for example, "the proportion of the payments relative to the settlement amount, . . . the

20   size of the payment," "the actions the plaintiff has taken to protect the interests of the class, the

21   degree to which the class has benefitted from those actions, . . . the amount of time and effort the

22   plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."

23   *Staton*, 327 F.3d at 977 (citations, quotation marks, and other alterations omitted); *id.* at 975

24   (cautioning, "[i]f class representatives expect routinely to receive special awards in addition to

25   their share of the recovery, they may be tempted to accept suboptimal settlements at the expense

26   of the class members whose interests they are appointed to guard" (citations omitted)).

27              Seventh, should the fees and enhancement award requested not be awarded in full,

28   the proposed agreement provides that the difference will revert to the Net Settlement Amount.

*See* Joint Stip. at 7.  This arrangement does not suggest collusion, and in fact signals the opposite.  *Cf. Bluetooth*, 654 F.3d at 947 (one sign of collusion is "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund").

Finally, the court has considered the mechanism for distributing the settlement funds proportionally based on the total number of weeks worked, and finds at this stage, the procedure is reasonable and will not unfairly allocate the settlement fund among the class members.  *See* Joint Stip. at 10–11.  The court cautions counsel, however, final approval will be granted only after the court receives a more detailed description of why this mechanism in this case is reasonable and fair.

The parties are advised the court does not plan to maintain jurisdiction to enforce the terms of the parties' settlement agreements.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *cf. Collins v. Thompson*, 8 F.3d 657, 659 (9th Cir. 1993).  Unless some independent basis supplies this court with jurisdiction, enforcement of the agreement is for the state courts.  *Kokkonen*, 511 U.S. at 382.

C.  Notice

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The notice must state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

21

1    The court has reviewed the proposed Class Notice of Settlement, Vahdat Decl.

2  Ex. B, and finds it conforms with due process and Rule 23(c)(2)(B).  The proposed notice

3  adequately describes the terms of the settlement, informs the class about the allocation of

4  attorneys' fees, and, once completed, will provide specific and sufficient information regarding

5  the date, time, and place of the final approval hearing.  *See Vasquez v. Coast Valley Roofing, Inc.*,

6  670 F. Supp. 2d 1114, 1126–27 (E.D. Cal. 2009).  It informs recipients how they may object or

7  opt out of the proposed settlement.  The proposed mode of delivery, by mail, also appears

8  appropriate in these circumstances.

9  IV.    CONCLUSION

10    In sum, the court has reviewed the proposed Settlement Agreement, Vahdat Decl.

11  Ex. A, and finds it fair, reasonable, and adequate on a preliminary basis.  The plaintiff class

12  appears likely, as a preliminary matter, to meet the certification criteria of numerosity,

13  commonality, typicality, adequacy, superiority, and predominance.  The court has also reviewed

14  the proposed Class Notice of Settlement, Vahdat Decl. Ex. B, and finds it to conform with due

15  process and Federal Rule of Civil Procedure 23.  Accordingly, the court GRANTS plaintiffs'

16  request for preliminary approval of the parties' Settlement Agreement on a class basis.

17    Sean S. Vahdat of Law Offices of Sean S. Vahdat & Associates, APLC and James

18  R. Hawkins of James Hawkins APLC are appointed class counsel.  Jessica Dearaujo and

19  Amymarie Kaelan are appointed class representatives.  Simpluris, Inc. is approved as claims

20  administrator.  The court orders the following final hearing schedule:

21    (1) Last day for defendants to provide to Claims Administrator the Class List:

22      August 1, 2016

23    (2) Last day for Claims Administrator to mail the Notice Packet to Class

24      Members: August 16, 2016

25    (3) Last day for Settlement Class to submit a timely signed Request for Exclusion

26      or Objections: September 30, 2016

27

28

(4) Last day to file Motion for Final Approval of Settlement, and Motion for Approval of Class Counsel's Attorneys' Fees and Costs and Class Representative Enhancement Payment: November 18, 2016

(5) Final Approval hearing: December 16, 2016 at 10:00 a.m. in Courtroom Number Three.

IT IS SO ORDERED.

DATED:  June 29, 2016.

_____
UNITED STATES DISTRICT JUDGE