1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JESSICA DEARAUJO, individually and          No.  2:14-cv-01408-KJM-DB
     on behalf of others similarly situated,
12
                    Plaintiffs,
13                                                ORDER

14          v.

15   REGIS CORPORATION, a Minnesota
     corporation; SUPERCUTS CORPORATE
16   SHOPS, INC., a Minnesota corporation;
     and DOES 1 through 99, inclusive,
17
                    Defendants.
18

19

20

21

22          This matter is before the court on named plaintiffs' unopposed motion for final

23   approval of class action settlement, an incentive award and an award of attorneys' fees and costs.

24   Mot., ECF No. 42-1; Mot. Attorneys' Fees, ECF No. 43.  The court held a hearing on November

25   18, 2016, at which Sean Vahdat and James Hawkins appeared for plaintiffs and Catherine Dacre

26   appeared for defendants.  ECF No. 47.  As explained below, the court GRANTS the motion.

27

28
                                            1

1    I.    BACKGROUND

2         A.    Factual and Procedural Background

3              Defendant Supercuts Corporate Shops, Inc. (Supercuts) is a wholly owned

4    subsidiary of defendant Regis Corporation (Regis) (collectively, defendants).  Preliminary

5    Approval Order 2 (Prelim. Order) 2, ECF No. 37.  Supercuts is authorized to do business in

6    California in cosmetology and hair care.  *Id.*[1]

7              Plaintiff Amymarie Kaelan worked for defendants as a stylist beginning in 2008,

8    was promoted to District Leader from on or about December 2010 through September 2012, and

9    then served as the Regional Human Resources Manager from September 2012 until about 2014.

10   *Id*.  She asserts five claims: (1) failure to indemnify necessary expenditures; (2) failure to provide

11   accurate wage statements; (3) failure to timely pay wages, (4) violations of the California Unfair

12   Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (5) penalties under the

13   Private Attorneys General Act of 2004 (PAGA), Cal. Labor Code §§ 2698 *et seq.*  Prelim. Order

14   at 2.

15             Plaintiff Jessica Dearaujo worked for defendants as a stylist beginning on July 23,

16   2008, and was promoted to Salon Manager on or about March 1, 2009.  *Id.* at 2–3.  She is

17   currently employed with defendants as a Salon Manager in Modesto, California.  *Id.*  She asserts

18   six claims: (1) failure to provide meal periods; (2) failure to authorize and permit rest periods;

19   (3) failure to provide accurate wage statements; (4) failure to reimburse necessary expenditures;

20   (5) violations of the UCL; and (6) penalties under PAGA.[2]  *Id.* at 3.

21   _____

22        [1] The court dismisses the Doe defendants. Fed. R. Civ. P. 4(m) (on its own motion, court
     may dismiss defendants not served within ninety days after complaint is filed); *Craig v. United*

23   *States*, 413 F.2d 854, 856 (9th Cir. 1969) (the court may dismiss the Doe defendants sua sponte).

24        [2] Under PAGA, if an employee's claim is successful, 75 percent of the penalties recovered

25   go to the California Labor Workforce Development Agency (LWDA), and the remaining 25
     percent to the aggrieved employees.  *Halliwell v. A-T Sols.*, 983 F. Supp. 2d 1179, 1182 (S.D.

26   Cal. 2013).  Plaintiffs contend approximately 955 employees would have a claim under PAGA.
     Mot. at 15.  Defendants do not contest this assertion, and in fact concede a PAGA payment is

27   appropriate.  *See generally id.*; Statement of Non-Opp'n, ECF No. 45; Settlement Terms 13, ECF
     No. 31-3.  Accordingly, plaintiffs' request for PAGA relief is GRANTED.

28

1    To support their claims, plaintiffs alleged defendants required them to use their car

2    for bank runs and errands, and to use their personal cell phones for defendants' benefit without

3    reimbursement.  Hawkins Settlement Decl. ¶ 26, ECF No. 42-3; First Amended Compl. (FAC)

4    ¶¶ 65–66, ECF No. 22.  Plaintiffs also alleged they were often required to work "off the clock"

5    during a scheduled meal or rest period.  FAC ¶ 23(a).

6    Plaintiffs filed their original class action complaints in Stanislaus County Superior

7    Court against Regis on May 8, 2014, and Regis removed the actions to this court on June 11,

8    2014.  ECF No. 1.  On April 15, 2015, by joint stipulation, plaintiffs filed the operative first

9    amended complaints, which added Supercuts as a defendant.  *See* FAC.  On May 11, 2015,

10   defendants filed answers to the first amended complaints.  *See* ECF No. 23.  On December 2,

11   2015, the court granted the parties' request to consolidate the two actions.  ECF No. 28.

12   In the meantime, the court had set a hearing on a motion for class certification,

13   ECF Nos. 11, 25, 28, but the parties first reached preliminary settlement after a full day of private

14   mediation on June 15, 2015, Hawkins Attorneys' Fees Decl. ¶ 16, ECF No. 43-1.  Before the

15   mediation, the parties engaged in formal discovery, which included the production of documents

16   and responses to interrogatories and document requests, and the taking of depositions of plaintiffs

17   Kaelan and Dearaujo.  *Id.* ¶ 12.  The parties also engaged in informal discovery, exchanging

18   documents, including a sample of defendants' time records and pay records.  *Id.*  No other pretrial

19   litigation has occurred.

20       B.    Preliminary Class Settlement Approval

21   Plaintiffs filed a motion for preliminary approval of class settlement on May 5,

22   2016, ECF No. 31, and defendants filed a statement of non-opposition to the motion on June 3,

23   2016, ECF No. 33.  The court preliminary approved the settlement on June 19, 2016 and

24   conditionally certified the following classes:

25           [A]ll persons employed by defendants as an Area Supervisor,
             District Leader, or Senior District Leader in California at any time
26           from May 8, 2010 through the date of preliminary approval of the
             settlement ("Settlement Class Period"), and who do not opt out of
27           the  Class  Action  Settlement  Agreement  ("Settlement"  or
             "Settlement Agreement").
28

3

1
2
3

> [A]ll hourly non-exempt persons employed by defendants as a Shift Manager or Salon Manager in California at any time during the same Settlement Class Period, and who do not opt out of the Settlement.

4  Prelim. Order at 3–4.

5          The court's preliminary approval identified five concerns that the court noted

6  would need to be addressed prior to final approval.  First, the court noted while the parties

7  reached settlement after participating in a full-day of mediation with an experienced third party

8  neutral, the parties presented little information to evaluate "the strength of plaintiffs' case," "the

9  risk, expense, complexity, and likely duration" of this litigation as compared to any class action;

10 "the risk of maintaining class action status throughout the trial," and "the amount offered in

11 settlement."  *Id.* at 17–18 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

12 1998)).  To assess the merits of the case, the parties would need to submit information exchanged

13 during the mediation for the court's *in camera* review.  *Id.* (citing *Bowling v. Pfizer, Inc.*, 143

14 F.R.D. 138, 140 (S.D. Ohio 1992) (ordering "an *in camera* disclosure" of confidential

15 information concerning "all past settlements made by the Defendants involving the [device in

16 question]"); Manual for Complex Litigation (MCL) § 21.631 ("A common practice is to receive

17 information . . . *in camera*.").

18         Second, the court noted while the parties reached settlement only after

19 participating in significant formal and informal discovery, final approval would be granted only

20 after the court reviewed a "more detailed description of the parties' discovery efforts in this case

21 and why those efforts contributed to a fair, reasonable, and adequate settlement."  *Id.* at 19.

22         Third, the court was concerned with the "clear sailing" provision of the agreement

23 because defendants and their attorneys agreed not to oppose class counsel's application for

24 attorneys' fees or costs.  *Id.* at 20.  Before final approval, the court noted it would closely

25 scrutinize fees requested.  *Id.*

26         Fourth, named plaintiffs' requests for incentive awards raised a potential concern

27 because such awards "are not to be given routinely."  *Id.* (citing *Morales v. Stevco, Inc.*, No.

28

00704, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011)).  Before granting final approval, the court noted it would assess whether the requested incentive awards are excessive.  *Id.*

Fifth, the parties' chosen mechanism for distributing settlement funds to class members, which calls for allotting the settlement funds proportionally based on the total number of weeks worked, appeared reasonable.  *Id.* at 21.  The court nonetheless cautioned counsel final approval would be granted only after the court received a more detailed explanation of the mechanism's reasonableness and fairness.  *Id.*

These concerns are addressed below.

C.      Key Terms of Settlement Agreement

Under the parties' settlement agreement, defendants agree to pay a gross settlement amount ("GSA") of $1,950,000.  Settlement Terms at 11.  The GSA is inclusive of all individual class settlement payments, enhancement awards, settlement class counsel's fees and costs, PAGA penalty payments, and all administration costs.  *Id.*  The settlement amount does not include defendants' share of applicable payroll taxes for wage payments made to Settlement Class Members under the settlement; defendants bear that cost separately.  *Id.*  Upon approval, the GSA of $1,950,000 will be distributed as follows:

1.  The total enhancement amount paid to named plaintiffs will be $30,000, with $15,000 for each named plaintiff;

2.  The class administrator will receive $17,000;

3.  The PAGA payment is $10,000, $7,500 of which will go to the California Labor Workforce Development Agency as its seventy-five percent share of PAGA penalties, with $2,500 distributed to the class on a pro rata basis;

4.  Class counsel will receive $650,000.00, or 33 percent of the GSA; and

5.  The amount paid to class counsel for litigation expenses will be $18,036.70.

*Id.* at 11–12; Hawkins Attorneys' Fees Decl. ¶18.  After deducting these distributions from the GSA, the settlement amount available to putative class members will be $1,227,463.30 ($1,950,000.00 – $722,536.70).  Salinas Decl. ¶ 11, ECF No. 43-9.

D.      Notice to and Response from Class Members

The putative class consists of 1,230 members.  Salinas Decl. ¶ 7.  On August 16, 2016, the class administrator sent notice packets to all members listed.  *Id.*  If a member's notice was returned as undeliverable and without a forwarding address, the administrator performed an advanced address search, known as a "skip trace," on Accurint, a reputable Lexis-Nexis research tool.  *Id.* ¶ 8.  Through the advanced searches, the administrator located ninety-two updated addresses, to which it sent notice packets.  *Id.*  Ultimately, eleven members' notices were undeliverable because the class administrator was unable to locate a current address.  *Id.*  The class administrator received one opt-out from the settlement, but no objections to the settlement.  Salinas Decl. ¶¶ 9–10.

II.     CLASS CERTIFICATION

A party seeking to certify a class must demonstrate the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  The court must undertake the Rule 23 inquiry independently.  *West v. Circle K Stores*, No. 04–0438, 2006 WL 1652598, at *2 (E.D. Cal. June 12, 2006).

Under Rule 23(a), before certifying a class, the court must be satisfied that: (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" inquiry).  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011); Fed. R. Civ. P. 23(a).

Where, as here, named plaintiffs seek certification under Rule 23(b)(3), the court must find also that "'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.'"  *Wal–Mart Stores, Inc. v. Dukes* ("*Dukes*"), 564 U.S. 338, 362 (2011) (quoting Fed. R. Civ. P. 23(b)(3)).  The matters pertinent to

6

1    these findings include: (A) the class members' interests in individually controlling the

2    prosecution or defense of separate actions; and (B) the extent and nature of any litigation

3    concerning the controversy already begun by or against class members; (C) the desirability or

4    undesirability of concentrating the litigation of the claims in the particular forum; and (D) the

5    likely difficulties in managing the class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D); *see also Zinser*

6    *v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

7                Here, the named plaintiffs seek final certification of the same class identified

8    preliminarily, made up of two subgroups:

9             [T]he "Kaelan Settlement Class[,]" [which] shall refer to all persons
              employed by any of the Defendants as an Area Supervisor, District
10            Leader, or Senior District Leader in California at any time during
              the settlement class period.
11

12            [T]he "Dearaujo Settlement Class[,]" [which] shall refer to all
              hourly non-exempt persons employed by any of the Defendants as a
13            Shift Manager or Salon Manager in California at any time during
              the Settlement Class Period.

14   Mot. at 10.  The class consists of the following:

15            Settlement Class Members shall refer to the Kaelan Settlement
              Class and the Dearaujo Settlement Class. Settlement Class Period
16            shall include the period from May 8, 2010 through the date of
              Preliminary Approval of the Settlement . . . June [30], 2016.
17

18   *Id.* For purposes of final approval, the court determines whether the class ultimately satisfies

19   Rules 23(a) and 23(b)(3).

20          A.      Numerosity

21                In its order granting preliminary approval, the court found the numerosity

22   requirement met because the parties agreed the putative class had 1,752 potential plaintiffs.

23   Prelim. Order at 12.  For final approval, the parties now agree the class has 1,230 members.

24   Salinas Decl. ¶ 7.  At hearing, the parties explained a payroll error caused the change in numbers;

25   the error has been corrected now prior to this request for final approval.

26                Although there is no absolute numerical threshold for numerosity, courts have

27   approved classes as small as, for example, thirty-nine, sixty-four, and seventy-one plaintiffs.

28   *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A.*

1   *Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)).

2   While the class size has decreased to 1,230 members, it still far surpasses the number of members

3   approved in past cases.  The class remains large enough to satisfy the numerosity requirement.

4         B.    <u>Commonality</u>

5          In preliminarily approving the class, the court found the commonality requirement

6   met because there were common class issues and questions.  Prelim. Order at 14.

7          To satisfy the commonality requirement, plaintiffs must do more than show "that

8   they have all suffered a violation of the same provision of law."  *Dukes*, 564 U.S. at 350.  Class

9   claims must depend upon a common contention and "must be of such a nature that it is capable of

10  classwide resolution—which means that determination of its truth or falsity will resolve an issue

11  that is central to the validity of each one of those claims in one stroke."  *Id.*  It is not so much that

12  the class raises common questions; what is necessary is "the capacity of a classwide proceeding to

13  generate common answers . . . ."  *Id.*  "[T]he merits of the class members' substantive claims are

14  often highly relevant when determining whether to certify a class."  *Ellis v. Costco Wholesale*

15  *Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

16         Here, there are several issues common to the class: (1) whether employees were

17  given inaccurate wage statements; (2) whether employees were paid adequate wages; and (3)

18  whether defendant indemnified plaintiffs' necessary expenditures.  Mot. at 14–15.  These issues

19  are based on common facts, the assessment of which will resolve the class's California Labor

20  Code and unfair competition claims.  Accordingly, these common issues satisfy the commonality

21  requirement.  *See Ching v. Siemens Indus., Inc.*, No. 11–4838, 2013 WL 6200190, at *4 (N.D.

22  Cal. Nov. 27, 2013) (finding commonality requirement satisfied where "the issues facing the class

23  ar[o]se from common questions involving [the] [d]efendant's calculation and payment of wages

24  and overtime"); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (finding

25  commonality requirement satisfied where plaintiffs identified "common factual questions, such as

26  whether [the] [d]efendants' policies deprived the . . . class members of meal periods, rest periods,

27  overtime pay, and reimbursement . . . and common legal questions, such as [the] [d]efendants'

28

1   obligations under [various sections of the] California Labor Code and California's Unfair

2   Competition law").

3       C.      Typicality

4           In the preliminary order, the court found the typicality requirement was satisfied

5   because plaintiffs had suffered the same or similar injury.  Prelim. Order at 14.

6           "'[T]he commonality and typicality requirements of Rule 23(a) tend to merge'"

7   because both act "'as guideposts for determining whether maintenance of a class action is

8   economical and whether the named plaintiff's claim and the class claims are so interrelated that

9   the interests of the class members will be fairly and adequately protected in their absence.'"

10  *Dukes*, 564 U.S. at 350 n.5 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13

11  (1982)).  A court resolves the typicality inquiry by considering "whether other members have the

12  same or similar injury, whether the action is based on conduct which is not unique to the named

13  plaintiffs, and whether other class members have been injured by the same course of conduct."

14  *Ellis*, 657 F.3d at 984; *Morales*, 2011 WL 5511767, at *6.

15          Here, plaintiffs contend the class members suffered similar injuries when

16  defendants failed to comply with California and federal laws.  Mot. at 13–18.  Indeed, each class

17  member was allegedly subjected to the defendants' provision of inaccurate wage statements, their

18  failure to reimburse business-related experiences, and their failure to indemnify necessary

19  expenditures. *Id*.  This satisfies the typicality inquiry.  *See Murillo*, 266 F.R.D. at 475 (plaintiffs

20  satisfied typicality inquiry where they suffered similar injuries attributed to defendants' allegedly

21  unlawful conduct).

22      D.      Adequacy of Representation

23          In the preliminary approval order, the court concluded named plaintiffs adequately

24  represented the class.  Prelim. Order at 13.

25          To determine whether the named plaintiffs do in fact protect the interests of the

26  class, the court must explore two factors: (1) whether the named plaintiffs and counsel have any

27  conflicts of interest with the class as a whole, and (2) whether the named plaintiffs and counsel

28  vigorously pursued the action on behalf of the class.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1 | 1020 (9th Cir. 1998); *see also Clersceri v. Beach City Investigation Servs., Inc.*, No. 10–3873,

2 | 2011 WL 320998, at *6 (C.D. Cal. Jan. 27, 2011) ("(1) the class representative must not have

3 | interests antagonistic to the unnamed class members, and (2) the representative must be able to

4 | prosecute the action 'vigorously through qualified counsel.'").

5 |        With respect to the first factor, nothing in the record before the court suggests the

6 | representative plaintiffs or counsel have any conflicts of interest with the other class members.

7 | Because plaintiffs' class-wide claims appear to be "completely aligned with [those] of the class,"

8 | *Collins*, 274 F.R.D. at 301, the court concludes there is no basis for finding a conflict.

9 |        With respect to the second factor, "[a]lthough there are no fixed standards by

10 | which 'vigor' can be assayed, considerations include competency of counsel and, in the context

11 | of a settlement-only class, an assessment of the rationale for not pursuing further litigation."

12 | *Hanlon*, 150 F.3d at 1021.  In addition, a named plaintiff will be deemed adequate "as long as the

13 | plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions

14 | based upon [the plaintiff's] lawyers' advice . . . ." *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121–22

15 | (N.D. Ill. 1990).

16 |        As detailed further below, plaintiffs' counsel has substantial experience in wage

17 | and hour class action litigation.  *See* Vadhat Decl. ¶ 5, ECF No. 42-2.  Further, plaintiffs have

18 | declined to pursue further litigation because discovery revealed, in part, weaknesses in plaintiffs'

19 | claim for inadequate meal and rest breaks.  Hawkins Settlement Decl. ¶ 26.  Lastly, plaintiffs

20 | themselves have participated in the litigation process, which included engaging in formal and

21 | informal discovery and numerous meet and confer sessions to assess and discuss the strengths and

22 | weaknesses of class claims, in addition to the formal mediation.  Hawkins Settlement Decl. ¶¶

23 | 20–22; Kaelan Decl. ¶¶ 6, 14, ECF No. 43-2; Dearaujo Decl. ¶¶ 6, 13, ECF No. 43-3.  Plaintiffs'

24 | participation is a relevant factor in determining the adequacy of representation.  *See Sepulveda v.*

25 | *Wal–Mart Stores, Inc.*, 237 F.R.D. 229, 244 (C.D. Cal. 2006).  The court finds the adequacy of

26 | representation requirement satisfied.

27 |

28 |

E.      Predominance

In the preliminary approval order, the court concluded plaintiffs met the predominance requirement because common questions relating to the lawfulness of defendants' policies make up a significant aspect of the case.  Prelim. Order at 15.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Although predominance is similar to Rule 23(a)'s commonality requirement, it is more demanding.  *Id.* at 624.  To determine whether common questions predominate, the court must consider "the relationship between the common and individual issues" by looking at the questions that pre-exist any settlement.  *Hanlon*, 150 F.3d at 1022.  Additionally, the predominance inquiry focuses on the "notion that adjudication of common issues will help achieve judicial economy."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009).

Here, the issues stemming from defendants' alleged conduct remain the same.  *See* Mot. at 13–18.  Plaintiffs allege from defendants' unlawful conduct, they suffered monetary damages in the form of inadequate wages and unreimbursed business-related expenses.  FAC ¶¶ 25(a)–(d), 37.  Nothing in the record suggests individual issues exist apart from the calculation of individual damages.  Resolving the issues on a class basis promotes judicial economy.  The predominance requirement is satisfied.

F.      Superiority

In the preliminary approval order, the court found plaintiffs satisfied the superiority requirement because of the burden otherwise placed on the parties and the courts by the bringing of multiple individual suits touching on the same or similar issues.  Prelim. Order at 16.

In ultimately resolving Rule 23(b)(3)'s superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating the litigation in one forum, and potential difficulties in managing the class action, although the last two considerations are not relevant in the settlement context.  *Schiller v. David's Bridal, Inc.*, No. 10–0616, 2012

11

1    WL 2117001, at *10 (E.D. Cal. June 11, 2012) ("In the context of settlement, however, the third

2    and fourth factors are rendered moot and are not relevant . . . because the point is that there will

3    be no trial . . . ." (citing *Amchem*, 521 U.S. at 620)).

4           As in the preliminary approval order, the court concludes here that if all 1,230

5    class members each brought suit, they would bring essentially the same claims for relatively small

6    sums and might have to expend substantial resources to cover litigation costs.  The court is not

7    aware of, and the parties have not cited, any other similar litigation proceeding elsewhere.  The

8    class action here is the superior means of litigating plaintiff's claims.

9           G.      Conclusion

10          In sum, the court finds plaintiffs satisfy Rules 23(a) and 23(b), and final approval

11   of the class is appropriate.

12   III.    SETTLEMENT AND FAIRNESS

13          A.      Legal Standard

14          When parties settle a class action, a court cannot simply accept the proposed

15   resolution; rather it must also satisfy itself that the proposed settlement is "fundamentally fair,

16   adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.  After preliminary certification and notice

17   to the class, as here, a court conducts a fairness hearing before finally approving any proposed

18   settlement.  *Narouz v. Charter Commc'ns, Inc.,* 591 F.3d 1261, 1267 (9th Cir. 2010); Fed. R.

19   Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a

20   hearing and on finding that it is fair, reasonable, and adequate.").  A court must balance a number

21   of factors in determining whether a proposed settlement is in fact fair, adequate and reasonable:

22              (1) the strength of the plaintiffs' case; (2) the risk, expense,
                complexity, and likely duration of further litigation; (3) the risk of
23              maintaining class action status throughout the trial; (4) the amount
                offered in settlement; (5) the extent of discovery completed and the
24              stage of the proceedings; (6) the experience and views of counsel;
                (7) the presence of a governmental participant; and (8) the reaction
25              of the class members to the proposed settlement.

26   *Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phx.*, 913 F. Supp. 2d 964, 974–75 (E.D. Cal.

27   2012).  The list is not exhaustive, and the factors may be applied differently in different

28

                                                   12

circumstances. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

The court must consider the settlement as a whole, rather than its component parts; the settlement "must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026; *but see In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 n.5 (9th Cir. 2013) (in concluding the proper amount of attorneys' fees, the agreement as a whole needed not stand or fall on that amount). Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

### 1.   The Strength of Plaintiffs' Case

When assessing the strength of plaintiffs' case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of [the] litigation." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). This is so because evidence has not been fully presented and "settlements [are] induced in large part by the very uncertainty as to what the outcome would be, had litigation continued." *Id.* Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

In preliminarily approving the class action, the court ordered the parties to submit more detailed information regarding the merits of the case and the parties' discovery efforts, Prelim. Order at 16–17, which the parties have done now in seeking final approval, *see* Hawkins Settlement Decl. ¶ 20.

Plaintiffs' case is two-fold. First, they continue to allege defendants neither indemnified expenditures nor presented accurate wage statements. Hawkins Settlement Decl. ¶ 26; FAC ¶ 65. Second, they continue to allege defendants did not provide adequate meal and rest breaks. Hawkins Settlement Decl. ¶ 26; FAC ¶ 2–4; 7. To support the first set of claims, plaintiffs alleged defendants required them to use their cars for traveling to make bank deposits and run other errands, and to use their personal cellphones for defendants' benefit, all without

1    reimbursement.  Hawkins Settlement Decl. ¶ 26.  While discovery supported the first set of

2    claims, it revealed weaknesses in plaintiffs' second set of claims.  *Id.*  For example, time records

3    indicated plaintiffs received thirty-minute meal breaks.  *Id.*

4           Accordingly, plaintiffs' case appeared strong in some aspects and weak in others.

5    In realizing this, plaintiffs acknowledged the significant uncertainty and risks presented in

6    litigating this case, which helped promote a voluntary resolution of the action.  *Id.* ¶ 28.  On

7    June 15, 2015, defendants and named plaintiffs participated in a lengthy mediation before an

8    experienced wage and hour and class action mediator, Michael Dickstein, in San Francisco,

9    California.  *Id.* ¶ 23; Kaelan Decl. ¶¶ 6, 14; Dearaujo Decl. ¶¶ 6, 13.  The mediation included

10   extensive discussion and examination of the parties' respective positions in the case.  Hawkins

11   Settlement Decl. ¶ 23.

12          Given the uncertainty of obtaining a favorable judgement for all claims, this factor

13   favors approving settlement.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. at

14   1390 (settlement approved where "the risk of an adverse verdict [for plaintiffs] . . .  weighed

15   heavily in the parties' considerations").

16

17                    2.    The Risk, Expense, Complexity and Likely Duration of Further Litigation;
                            The Risk of Maintaining Class Action Status Throughout Trial

18          "Approval of settlement is 'preferable to lengthy and expensive litigation with

19   uncertain results.'"  *Morales*, 2011 WL 5511767 at *10 (quoting *Nat'l Rural Telecomms. Coop. v.*

20   *DIRECTV, Inc.* (*DIRECTV*), 221 F.R.D. 523, 526 (C.D. Cal. 2004)).  The Ninth Circuit has

21   explained "there is a strong judicial policy that favors settlements, particularly where complex

22   class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

23   2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  "'[I]t must

24   not be overlooked that voluntary conciliation and settlement are the preferred means of dispute

25   resolution.  This is especially true in complex class action litigation . . . .'"  *Id.* (quoting *Officers*

26   *for Justice*, 688 F.2d at 625).

27          Here, while the wage and hour class action is not particularly complex, defendants

28   contend if pressed to litigate, they would inquire into each individual class member's wage,

                                                      14

1   reimbursement, meal and rest claims.  *See* Mot. at 30; Hawkins Settlement Decl. ¶ 32.

2   Considering there are 1,230 members in the class, an individualized inquiry, if allowed, would

3   compound the complexity and expense of litigation as well as prolong resolution.  Further,

4   plaintiffs have faced the risk of not obtaining final approval of class certification, or of losing it

5   during trial.  During mediation, defendants forcefully opposed class certification, arguing too

6   many individual and unique issues existed among class members.  Mot. at 31; Hawkins

7   Settlement Decl. ¶ 25.  Accordingly, maintaining the commonality and predominance

8   requirements could serve as an impediment should litigation proceed.  Finally, defendants have

9   provided notice that should plaintiffs succeed on the merits at trial, their appeals would further

10  delay recovery.  Mot. at 31; Hawkins Settlement Decl. ¶ 30.

11          The benefit of guaranteed recovery today outweighs the uncertainty, risk, and

12  expense following class certification, at this stage, including the risk of an unfavorable judgement

13  on the merits.  This factor favors approval.

14                  3.      The Amount Offered in Settlement

15          The proposed settlement is not to be judged against "a hypothetical or speculative

16  measure of what might have been achieved by the negotiators."  *Officers for Justice*, 688 F.2d at

17  625; *see also Collins*, 274 F.R.D. at 302 (a court must "'consider plaintiffs' expected recovery

18  balanced against the value of the settlement offer'" (quoting *In re Tableware Antitrust Litig.*,

19  484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007))).

20          Based on the parties' settlement agreement, the class administrator calculated the

21  settlement amounts for all 1,230 class members.  Mot. at 11; Hawkins Settlement Decl. ¶ 12.  The

22  average settlement payment per member is $998.75; the highest settlement amount is $2,551.40.

23  Hawkins Settlement Decl. ¶ 12; Salinas Decl. ¶ 11.  These figures derived from the parties'

24  chosen distribution mechanism, which disbursed funds based on the total number of hours

25  worked.  Hawkins Settlement Decl. ¶¶ 10, 14.  At the preliminary approval stage, the court did

26  not probe the average amount per class member, but asked the parties to explain further why their

27  proposed calculation mechanism was fair.  Prelim. Order at 21.  The parties aver their mechanism

28  allows class members who worked the most weeks to recover the most from the settlement fund.

1    Hawkins Settlement Decl. ¶¶ 10, 14.  Moreover, the mechanism is efficient because it is not

2    feasible to calculate each member's damages; no records establish the number of miles each

3    individual drove to make bank deposits or to run other errands.  *Id.* ¶ 10.  Class counsel represent

4    the average amount provides the class with a recovery that compares favorably to what would

5    have been sought at trial.  Mot. at 20; Hawkins Settlement Decl. ¶ 35.

6           This factor favors approval.

7                  4.      The Extent of Discovery and the Stage of the Proceedings

8           "In the context of class action settlements, 'formal discovery is not a necessary

9    ticket to the bargaining table' where the parties have sufficient information to make an informed

10   decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

11   1998) (quoting *In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir. 1982)).

12          Plaintiffs' counsel represents that the parties engaged in formal and informal

13   discovery and investigation and made repeated efforts to resolve the case.  Hawkins Settlement

14   Decl. ¶¶ 20, 21.  The parties have exchanged information and documents including

15   interrogatories, employee handbooks, relevant policies on timekeeping, and payroll records.  *Id.*

16   ¶ 20.  The parties also engaged in numerous meet and confer sessions to assess and discuss the

17   merits of the case and class certification.  *Id.* ¶ 22.

18          The court is satisfied formal and informal discovery was sufficient to inform

19   plaintiffs' assessment of the case, and that it enabled the parties to reach a meaningful settlement

20   agreement.  This factor favors approval.

21                  5.      The Experience and Views of Counsel

22          In considering the adequacy of the terms of a settlement, the trial court is entitled

23   to, and should, rely upon the judgment of experienced counsel for the parties.  *See DIRECTV,*

24   *Inc.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are

25   most closely acquainted with the facts of the underlying litigation.") (internal quotation marks

26   and citations omitted).  This reliance is warranted because "[p]arties represented by competent

27   counsel are better positioned than courts to produce a settlement that fairly reflects each party's

28

1    expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

2    1995).

3            Class counsel Hawkins and Vahdat are experienced practitioners who have

4    successfully litigated many similar cases.  Hawkins Settlement Decl. ¶ 38; Vahdat Decl. ¶ 5, ECF

5    No. 43-6.  For example, Hawkins and his firm have successfully litigated twenty-three wage and

6    hour class actions, many of which have settled.  Hawkins Settlement Decl. ¶¶ 38(a)–(w).  Vahdat

7    has litigated over thirteen wage and hour class actions, many of which have settled as well.

8    Vahdat Decl. ¶¶ 4(a)–(m).  Based on their experience, class counsel believe the settlement is fair

9    and should be approved.  Hawkins Settlement Decl. ¶ 43.

10           This factor favors approval.  *See Barbosa v. Cargill Meat Solutions Corp.,*

11   297 F.R.D. 431, 447 (E.D. Cal. 2013) (because of experience, "[c]lass [c]ounsel understood the

12   complex risks and benefits of any settlement and concluded that the proposed Settlement was a

13   reasonable recovery").

14           6.      The Presence of a Governmental Participant

15           This factor does not apply because no government entity participated in the case.

16   *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act* (*FACTA*) *Litig.*,

17   295 F.R.D. 438, 455 (C.D. Cal. 2014) (factor does not apply in absence of government

18   participant).

19           7.      The Reaction of Class Members to the Proposed Settlement

20           "The absence of a large number of objections to a proposed class action settlement

21   raises a strong presumption that the terms of a proposed class settlement action are favorable to

22   the class members."  *DIRECTV*, 221 F.R.D. at 529.  Where there are no objections as here, the

23   presumption is particularly strong.  *Lo v. Oxnard European Motors*, LLC, No. 11–1009, 2012

24   WL 1932283, at *2 (S.D. Cal. May 29, 2012) (noting "the fairness of the terms of the settlement

25   is bolstered by the fact that no objections were made").

26           Here, while there was one opt-out from the settlement, there were no objections to

27   the proposed settlement agreement.  Salinas Decl. ¶ 9–10.  This factor weighs in favor of

28   approving the settlement.

17

1        8.      Conclusion

2               In sum, the relevant factors weigh in favor of approval of settlement.  The court

3    still proceeds to determine whether collusion has occurred.

4        B.      Collusion

5               Where the parties negotiate a settlement agreement before a formal class

6    certification, as in the instant case, the court must evaluate the settlement for evidence of

7    collusion with a "higher level of scrutiny."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d

8    935, 946 (9th Cir. 2011).  "Collusion may not always be evident on the face of a settlement, and

9    courts therefore must be particularly vigilant not only for explicit collusion, but also for more

10   subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain

11   class members to infect the negotiations."  *Id.* at 947.

12              A few such signs may include: (1) a disproportionate distribution of the settlement

13   to counsel; (2) a "clear-sailing" provision, under which the defendant agrees not to oppose an

14   attorney's fee award up to a certain amount, *id.*; and (3) when the parties arrange for fees not paid

15   to revert to defendants rather than to be added to the class fund., *id.*

16              Here, class counsel seek $650,000.00, or 33 percent of the GSA.  Mot. at 12.

17   During the preliminary hearing, the court observed while the proposed fee award is above the

18   percentage-of-recovery "benchmark" rate of twenty-five percent (25 %), the record did not lead

19   the court to believe anything foul was afoot.  Prelim. Order at 19.  The record now before the

20   court bolsters this conclusion.  Class counsel took the case on a contingency-fee basis without

21   compensation and risked losing on the merits if the case proceeded to trial.  Despite this, and as

22   explained in more detail below, class counsel obtained a favorable settlement early, in the face of

23   vigorous opposition to class certification and where evidence unearthed in discovery had the

24   potential to eliminate at least some claims.  Mot. at 31; Hawkins Decl. ¶¶ 25–26.  Additionally,

25   the rate is not disproportionate and is within the Ninth Circuit's range of acceptable percentages.

26   *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming attorneys' fees

27   comprising thirty-three percent of the common fund when justified by the complexity of the

28   issues and the risks undertaken by counsel).  This factor favors finding no collusion.

1          As to the second sign, the court previously raised concerns regarding the

2   settlement's "clear-sailing" provision.  *See* Prelim. Order at 20.  Because attorneys' fees will be

3   paid from the settlement fund, this concern is ameliorated.  *See Rodriguez v. W. Publ'g Corp.*,

4   563 F.3d 948, 961 n.5 (9th Cir. 2009) (collusion generally inferred from a "clear-sailing"

5   provision where attorney's fees are paid on top of the settlement fund).  This factor favors finding

6   no collusion.

7          As to the third sign, an agreement for unpaid funds to revert back to defendants

8   also is not present, because the settlement agreement provides that any such funds will revert to

9   the Net Settlement Amount.  Settlement Terms at 12.  This factor favors finding no collusion.

10         No evidence of collusion stands in the way of approving the settlement.

11      C.     <u>Attorneys' Fees, Costs and Incentive Award</u>

12         1.     <u>Requests for Attorneys' Fees</u>

13          Rule 23 permits a court to award "reasonable attorney's fees  . . . that are

14   authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Even when the parties

15   have agreed on an amount, the court must award only reasonable attorneys' fees.  *Bluetooth*,

16   654 F.3d at 941.  "Where a settlement produces a common fund for the benefit of the entire class,

17   courts have discretion to employ either the lodestar method or the percentage-of-recovery

18   method."  *Id.* at 942.  Courts should employ the lodestar method where, for example, awarding

19   the requested percentage of a "megafund" would yield windfall profits for class counsel in light

20   of the hours spent on the case.  *Id.*  But here, where the "benefit to the class is easily quantified"

21   in a common-fund settlement, the court can employ the percentage-of-recovery method.  *Id.*  The

22   Ninth Circuit has held the court may, but is not required to, compare the lodestar and the

23   percentage benchmark to determine if requested attorneys' fees are inappropriately high or low.

24   *Fischel v. Equitable Life Assurance Soc'y of the United States*, 307 F.3d  997, 1007 (9th Cir.

25   2002) (finding no error where district court awarded fees under lodestar method and failed to

26   compare lodestar with 25 percent benchmark).  Overall, the goal is to produce a reasonable result.

27   *Bluetooth*, 654 F.3d at 942.

28

1    In the Ninth Circuit, as noted above, the benchmark for percentage-of-recovery

2    awards is twenty-five percent of the total settlement award, which may be adjusted up or down.

3    *Hanlon*, 150 F.3d at 1029; *Ross v. U.S. Nat'l Bank Ass'n*, No. 07–02951, 2010 WL 3833922, at

4    *2 (N.D. Cal. Sept.  29, 2010).  Factors that may justify departure from the benchmark include:

5    (1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee;

6    (4) counsel's efforts, experience, and skill; and (5) awards made in similar cases.  *Vizcaino v.*

7    *Microsoft Corp.* (*Vizcaino II*), 290 F.3d 1043, 1048 (9th Cir. 2002).

8    "The twenty-five percent benchmark rate, although a starting point for analysis,

9    may be inappropriate in some cases.  Selection of the benchmark or any other rate must be

10   supported by findings that take into account all of the circumstances of the case." *Id.*  "[T]he

11   exact percentage varies depending on the facts of the case, and in most common fund cases, the

12   award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491

13   (E.D. Cal. 2010); *Williams v. Centerplate, Inc.*, No. 11–2159, 2013 WL 4525428, at *7 (S.D. Cal.

14   Aug. 26, 2013) (concluding 30 percent of the common fund, or $195,000 in attorneys' fees, was

15   reasonable); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (noting "nearly

16   all common fund awards range around 30%").

17   The court finds the fee requested is reasonable.  As recounted above, class counsel

18   retained a favorable result in the form of early settlement and adequately proportionate awards.

19   In a common fund case, "the size of the recovery constitutes a suitable measure of the attorneys'

20   performance." *Vizcaino v. Microsoft Corp.* (*Vizcaino I*), 142 F. Supp. 2d 1299, 1303 (W.D.

21   Wash. 2001).  The settlement agreement here established a gross amount of $1,950,000 to

22   compensate members for missed rest and meal breaks as well as inadequate wage statements and

23   unreimbursed expenses.  Settlement Terms at 11.  The common fund constitutes extraordinary

24   relief in this case, because, as class counsel note, the evidence obtained in discovery virtually

25   eliminated some claims, and defendants' vigorous advocacy may have compromised class

26   certification.  Mot. at 31; Hawkins Decl. ¶ 25.  Second, for the same reasons, the court notes the

27   case was particularly risky, because discovery virtually eliminated at least one claim and because

28   defendants vigorously challenged class certification.  Courts have recognized that a high risk

20

1  factor is one reason for increasing class counsel's attorney fee award above the "benchmark" 25

2  percent fee. *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 (33 percent of the common fund as

3  attorneys' fees was justified because of the complexity of the issues and the risks).

4          Third, and as recounted above, class counsel took this case on a contingency-fee

5  basis without compensation, bearing the entire costs of litigation for approximately three years.

6  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (percentage above 25

7  percent benchmark justified where counsel took case on contingency basis for approximately two

8  years).  Fourth, Hawkins and Vahdat each brought their significant experience with wage and

9  hour class actions to the bargaining table to achieve a favorable outcome. *Williams, Inc.*, 2013

10  WL 4525428, at *7 (percentage above 25 percent benchmark justified where settlement resulted

11  from arms-length negotiations between experienced counsel).

12          Fifth, and also as recounted above, the requested percentage is within a range of

13  commonly acceptable attorneys' fees awards in the Ninth Circuit.  *Vasquez*, 266 F.R.D. at 491

14  (noting "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3%

15  of the total settlement value, with 25% considered the benchmark"); *Singer v. Becton Dickinson*

16  *& Co.*, No. 08–821, 2010 WL 2196104, at *9 (S.D. Cal. Jun. 1, 2010) (noting the amount of

17  33.33 percent of the common fund for a wage and hour class action settlement "falls within the

18  typical range of 20% to 50% awarded in similar cases").  The requested percentage award is

19  reasonable and warranted in this case.

20          The court grants the request for attorneys' fees in the amount of $650,000.00,[3]

21  which represents 33 percent of the common fund.

22

23  _____

24       [3] In making a "rough calculation," the court determines the requested fee satisfies a
lodestar cross-check.  *Schiller v. David's Bridal, Inc.*, No. 10-00616, 2012 WL 2117001, at *22

25  (E.D. Cal. June 11, 2012) (a court using lodestar as cross-check need only make a "rough
calculation.").  Class counsel represent that the lodestar amount is $769,596.00.  Hawkins Decl.

26  for Attorneys' Fees ¶ 31.  After controlling for the going rate for attorney fees in the Eastern
District of California, which brings the lodestar amount to $500,433.75, and applying a multiplier

27  of 1.3 for quality of representation and early benefit to the class, the lodestar amount is
650,563.88, essentially equivalent to the amount requested.

28

1          2.      Requests for Costs

2                  The court must also determine an appropriate award of costs and expenses.

3    Fed. R. Civ. P. 23(h).  "[I]n evaluating the reasonableness of costs, the judge has to step in and

4    play surrogate client."  *Ross v. Bar None Enters., Inc.*, No. 13–00234, 2015 WL 1046117, at *11

5    (E.D. Cal. Mar. 10, 2015).  "In keeping with this role, the court must examine prevailing rates

6    and practices in the legal marketplace to assess the reasonableness of the costs sought."  *Id.*

7                  Here, class counsel aver the combined unreimbursed costs total $18,036.70, which

8    include court filing fees, mediation fees, and travel.  Mot. Attorneys' Fee 22, ECF No. 43.  The

9    costs requested reflect no surcharge, and are supported by counsel's records submitted in support

10   of approval.  *See* Settlement Terms at 12; Hawkins Settlement Decl. ¶ 41.  The court finds the

11   costs requested to be reasonable.  *See Barbosa*, 297 F.R.D. at 454 (costs associated with travel,

12   mediation fees, photocopying are "routinely reimbursed"); *Fontes v. Heritage Operating, L.P.*,

13   No. 14–1413, 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving class counsel's

14   costs, which included "court filing fees, research costs, mediation-related expenses, attorney

15   services costs, and travel expenses.").

16          3.      Incentive Award

17                  Each named plaintiff requests an incentive award of $15,000, or $30,000 in total.

18   Hawkins Settlement Decl. ¶ 36.  Generally speaking, incentive awards are meant to "compensate

19   class representatives for work done on behalf of the class, to make up for financial or reputational

20   risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a

21   private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  While such awards are fairly typical

22   in class action cases, *id.* at 958, the decision to approve such an award is a matter within the

23   court's discretion, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

24                  In determining whether to approve an incentive award, courts may consider the

25   following factors: (1) the risk to the class representative in commencing suit, both financial and

26   otherwise; (2) the notoriety and personal difficulties encountered by the class representative;

27   (3) the amount of time and effort spent by the class representative; (4) the duration of the

28   litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a

1    result of the litigation.  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal.

2    1995).

3              With respect to the first factor, plaintiffs contend by initiating this case they

4    shouldered a degree of personal risk, including compromising a career in plaintiffs' field of work,

5    reduced earning potential and financial liability if defendants prevailed.  Kaelan Decl. ¶¶ 20–21,

6    ECF No. 43-2; Dearaujo Decl. ¶ 18, ECF No. 43-3.  For example, since filing this lawsuit, Ms.

7    Kaelan has been unable to find work in Human Resources, and her income has been reduced from

8    $30.00 per hour to $17.00 per hour.  Kaelan Decl. ¶ 20.  Nonetheless, she still chose to pursue

9    this litigation, contending she sought to make things right for her co-workers.  *Id.*  Dearaujo faced

10   exposure for opposing parties' costs and attorneys' fees if plaintiffs lost.  Dearaujo Decl. ¶ 18.

11   Their risks are relevant factors in evaluating an incentive award request.  *See Staton v. Boeing*

12   *Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The first factor weighs in favor of granting an incentive

13   award.

14             With respect to the second factor, nothing in the record suggests the litigation

15   gained any particular notoriety.  This factor thus does not cut either way.

16             With respect to the third factor, plaintiffs state they engaged in significant work

17   personally in moving this case forward.  Kaelan Decl. ¶ 18; Dearaujo Decl. ¶ 17.  This work

18   included obtaining information from class members to provide to counsel, engaging in numerous

19   phone conferences during discovery and in preparation for mediation, and traveling to Irvine and

20   Sacramento for depositions.  Kalen Decl. ¶¶ 11–19; Dearaujo Decl. ¶¶ 10–18.  Because plaintiffs

21   expended significant efforts and were involved in the mediation, this factor weighs in favor of

22   granting them each an incentive award.

23             With respect to the fourth factor, this case was not particularly protracted.

24   Plaintiffs initiated the case on May 8, 2014, mediated on June 15, 2015, and requested

25   preliminary approval on May 5, 2016.  Not. Remov., ECF No. 1; Hawkins Enhancement Award

26   Decl. ¶ 16, ECF No. 46.  Given the relatively modest length of litigation, the court finds the

27   fourth factor neutral.  *Cf. Van Vranken*, 901 F. Supp. at 299 (where the class representative's

28   "participation lasted through [over thirteen] years of litigation [,]" an incentive award was

1  appropriate); *see also Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, No. 13–00672, 2015 WL

2  3622999, at *14 (E.D. Cal. June 9, 2015).

3          Finally, with respect to the fifth factor, the personal benefit enjoyed by plaintiff,

4  under the class settlement agreement plaintiffs will not gain any benefit beyond what they will

5  gain as class members.  *See generally* Kalen Decl.; *see generally* Dearaujo Decl.; *see also*

6  *FACTA*, 295 F.R.D. at 472 ("An incentive award may be appropriate when a class representative

7  will not gain any benefit beyond that he would receive as an ordinary class member.").  This

8  factor weighs in favor of granting an incentive award.

9          On balance, the relevant factors favor granting an incentive award.  The court

10  reviews the requested incentive awards of $15,000, which are nearly three times the amount

11  typically deemed reasonable.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463

12  (approving a $5,000 incentive award); *Ching*, 2014 WL 2926210, at *9 (approving a $5,000

13  incentive award and noting that in the Northern District, "a $5,000 incentive award is

14  presumptively reasonable"); *see also FACTA*, 295 F.R.D. at 470 (approving a $5,000 incentive

15  award).  On the other hand, the award as requested is 1.5 percent of the common fund, a

16  percentage significantly lower than in *Staton*, in which the Ninth Circuit overturned a class action

17  judgment that included an incentive request for more than fifty percent of common fund because

18  the plaintiffs' award would have created a "disparity between the awards to the named plaintiffs

19  and . . . the awards to absent class members."  *Staton*, 327 F.3d at 981.  Here, no party contends

20  the requested incentive award would create a disparity between named plaintiffs and the rest of

21  the class.  This weighs in favor of rewarding the amount requested, subject to the further

22  assessment conducted below.

23          In determining the reasonable amount, the court looks to facts particular to each

24  named plaintiff.  *See Palacios v. Newman Grain, Inc.*, No. 14–1804 (E.D. Cal. filed May 27,

25  2016) (finding requested enhancement award of $10,000 for each of five named plaintiffs to be

26  excessive in light of case law, which typically approves an award of no more than $5,000 for each

27  plaintiff; higher amount approved for only one plaintiff in light of facts of his case); *see also, e.g.,*

28  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462 (E.D. Cal. 2013) (collecting cases);

1    *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. 07–00362, 2009 WL 3562871, at *5 (N.D.

2    Cal. Oct. 27, 2009) (collecting cases).

3              As recounted above, since filing the lawsuit, Ms. Kaelan has been unable to find

4    work in Human Resources, and her income has been reduced from $30.00 per hour to $17.00 per

5    hour.  Kaelan Decl. ¶ 20.  Further, she has spent approximately 380 hours assisting with the case.

6    *Id.* ¶ 18. On the other hand, Ms. Dearaujo has maintained her job throughout litigation.  Mot.

7    Attorneys' Fees at 23–24.  Additionally, she spent 70 hours assisting with the case.  Dearaujo

8    Decl. ¶ 17.  Considering the greater amount of time Ms. Kaelen spent on the case and the

9    employment-related drawbacks she has experienced, the court grants a $15,000 incentive award

10   to Ms. Kaelen and a presumptively reasonable $5,000 incentive award to Ms. Dearaujo.

11              4.    Class Administrator's Fee

12              Plaintiff also requests the court approve administrative costs in the amount of

13   $17,000, to be paid to the third-party class administrator.  Salinas Decl. ¶ 12.  The administrator's

14   responsibilities included handling 1,229 claims.  *Id.*  The parties have shown the administrative

15   cost is warranted here.  *See Ching*, 2014 WL 2926210, at *2 (approving an estimated $15,000

16   claims administrator fee for sixty-eight claims); *Chu v. Wells Fargo Invs., LLC*, No. 05–4526,

17   2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (granting $40,528.08 in costs associated with

18   administration of case with 1,320 class members and $6,900,000 settlement amount).  The fee is

19   approved.

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

IV.    <u>CONCLUSION</u>

In conclusion, the court approves the class settlement as follows:

1.    The court AWARDS an incentive payment of $15,000 to Ms. Kaelen and $5,000 to Ms. Dearaujo, for a combined total of $20,000;

2.    The court AWARDS $17,000 to the class administrator;

3.    The court APPROVES the PAGA payment of $7,500 to be distributed to the California Labor Workforce Development Agency;

4.    The court APPROVES attorneys' fees in the amount of $650,000.00; and

5.    The court APPROVES litigation expenses in the amount of $18,036.70.

No later than fourteen days after the date of this order the claims administrator shall disburse the attorneys' fees and costs.

The Clerk of the Court is directed to CLOSE this case.

IT IS SO ORDERED.

DATED:  July 21, 2017.

_____
UNITED STATES DISTRICT JUDGE